D. N. & E. WALTER & CO., HOYT, SHEPSTON & SCIARONI *v.* UNITED STATES (No. 4832)[1]

United States Court of Customs and Patent Appeals, February 21, 1956

*Lawrence & Tuttle (George R. Tuttle* and *Charles F. Lawrence* of counsel) for appellants.

*George S. Leonard,* Acting Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Richard H. Welsh,* trial attorney, of counsel), for the United States.

[1] C. A. D. 615.

*Walter E. Doherty, Jr., amicus curiae.*

[Oral argument December 6, 1955, by Mr. Tuttle, Mr. Welsh, and Mr. Doherty]

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE, and JACKSON (retired), Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, pursuant to its decision, C. D. 1629, overruling a protest by appellants and sustaining the collector's classification of the merchandise involved, consisting of hooked rugs, as floor coverings wholly or in chief value of wool, not specially provided for, under paragraph 1117 (c) of the Tariff Act of 1930. It is contended by appellants that its merchandise should have been classified under paragraph 1116 (a) of the said Act, as modified by the Iranian Trade Agreement, T. D. 51067.

The pertinent paragraphs are as follows:

| United States Tariff Act of 1930 Paragraph | Description of article | Rate of duty |
|---|---|---|
| 1116 (a) | Oriental, Axminster, Savonnerie, Aubusson, and other carpets, rugs, and mats, not made on a power-driven loom, plain or figured, whether woven as separate carpets, rugs, or mats, or in rolls of any width. | 25¢ per square foot, but not less than 22½% ad valorem. |

Par. 1117.

\* \* \* \* \* \* \*

(c) All other floor coverings, including mats and druggets, wholly or in chief value of wool, not specially provided for, valued at not more than 40 cents per square foot, 30 per centum ad valorem; valued at more than 40 cents per square foot, 60 per centum ad valorem.

The testimony shows that, in the manufacture of the hooked rugs here involved, a base fabric consisting of warp and weft threads is first woven on a hand loom. The base fabric is spread across a frame and wool yarn is punched into the fabric with a tool referred to as a hooker, yarns of different colors being inserted at predetermined points to form the desired pattern. When yarn has been punched into the entire fabric, except for a margin which is folded to form a hem, the result is a rug whose surface is composed of loops. If desired, however, the loops may be cut to produce a pile rug.

In rejecting appellants' contention that its rugs should be classified under paragraph 1116 (a), *supra*, the Customs Court applied the doctrine of *ejusdem generis*, and held that such rugs were not of the

class or kind as those *eo nomine* provided for in that paragraph, namely, Oriental, Axminster, Savonnerie, and Aubusson. It is, therefore, necessary to consider how the latter rugs are made.

Oriental rugs, as described in the testimony, are usually made by stringing warp threads between two beams or rollers, twisting short pieces of wool of predetermined colors around the warp threads in a transverse row, inserting a weft thread, packing down that thread and wool pieces, then repeating the process until the rug is completed. The yarns which form the pile, it is to be noted, are inserted during the weaving of the warp and weft threads.

There are also some forms of Oriental rugs which do not include a pile but are produced by a flat weaving of wool yarns.

According to the witnesses, Savonnerie rugs and Axminster rugs, not made on a power-driven loom, are produced in a manner similar to Oriental rugs, the warp threads being fixed on spaced beams and alternate weft threads and layers of pile tufts being put in place during the weaving operation.

Aubusson rugs are described as being produced by a flat weaving of yarns without pile tufts.

From the above descriptions it will be seen that all carpets, rugs, and mats mentioned *eo nomine* in paragraph 1116 (a) are *woven;* and it is also noted that that paragraph includes carpets, rugs, and mats "whether woven as separate carpets, rugs, or mats, or in rolls of any width." This appears to be a clear indication that the paragraph was intended to be limited to woven articles.

The language of paragraph 1116 (a), here under consideration, is quite similar to that of paragraph 1116 of the Tariff Act of 1922, which was construed by this court in *United States* v. *Marshall Field & Co.,* 18 C. C. P. A. (Customs) 228, T. D. 44404. In that case it was said:

> We are convinced that the reasonable and proper construction of paragraph 1116 is that it was intended to include therein only *woven* carpets and rugs made from or with yarns, threads and filaments; and that to segregate "other carpets and rugs, not made on a power-driven loom" from the remainder of the types mentioned in the first clause, and treat the former as *not* meaning articles *woven* from yarn, threads and/or filaments, would be erroneous. * * * It seems clear to us that Congress was providing in the paragraph strictly for woven products * * *. (Italics quoted.)

In view of the foregoing, it must be concluded that paragraph 1116 (a) of the Tariff Act of 1930 is limited to woven articles.

The Encyclopedia Britannica (1942), Volume 23, page 445, defines "weaving" as follows:

> The process of weaving consists in interlacing at right angles two or more series of flexible materials, of which the longitudinal are called warp and the transverse weft. Weaving, therefore, embraces only one section of the textile industry, for felted, plaited, netted, hosiery and lace fabrics lie outside its definition.

Similarly, in the Columbia Encyclopedia (1950) as

. The art of forming a fabric by interlacing at right angles two or more sets of yarn or other material.

It is clear from the above definitions that "weaving," as commonly understood, involves an interlacing of threads or yarns at right angles; and there is no evidence that the word has a commercial meaning differing from its common meaning.

It follows that the process by which the yarn is hooked into the backing in appellants' rugs cannot properly be considered to be weaving since, even assuming it to be an interlacing, the yarn is not at right angles to either the warp or the weft threads, but is in the form of a pattern or design. Under such circumstances, we are of the opinion that appellants' rugs are not woven in the sense required by paragraph 1116 (a), even though they include, as an element, a woven backing fabric. The language "rugs * * * whether woven as separate carpets, rugs, or mats, * * *" must be construed as being limited to rugs which are *formed by weaving*, rather than as including rugs which comprise a pre-woven part. We think the statement that a rug is woven would ordinarily be understood as meaning that the rug itself is produced by a weaving operation; and it is noted that all the rugs mentioned *eo nomine* in paragraph 1116 (a) are woven in that sense. Some of the rugs named are produced by a simple weaving operation, and others by weaving combined with the insertion of piling, but in each case the procedure which actually forms the materials into a rug is a weaving process.

Moreover, even if paragraph 1116 (a) were not limited by express language to woven rugs, appellants' rugs would, in our opinion, be excluded from classification under that paragraph by the doctrine of *ejusdem generis*. It has been repeatedly held that that paragraph and its predecessor paragraph 1116 of the Tariff Act of 1922 do not embrace all wool rugs not made on power-driven looms, but only rugs which are of the same class or kind as those provided for *eo nomine*. *United States* v. *Marshall Field & Co., supra; United States* v. *Marshall Field & Co.*, 18 C. C. P. A. (Customs) 403, T. D. 44642; and *New England Guild* v. *United States*, 26 C. C. P. A. (Customs) 42, T. D. 49577. In the last two cases cited it was held that rugs generally similar to the rugs of appellants in the instant case, but made on a backing fabric produced on a power-driven loom, were so dissimilar to Oriental, Axminster, Savonnerie, and Aubusson rugs that they could not properly be classified as being woven in a tariff sense. It is true, as argued by appellants, those decisions were based in part upon the fact that machinery was used in producing the rugs under consideration while the rugs at bar are entirely hand made; however, we are of the opinion that the fact that the instant rugs were formed by hooking yarn into a pre-woven backing, whereas all the rugs provided for *eo nomine* in

paragraph 1116 (a) were formed by true weaving operations, constitutes such a difference as to preclude classification of appellants' rugs under that paragraph.

In the case of *Emporium Capwell* v. *United States*, 24 Cust. Ct. 407, Abstract 54164, the United States Customs Court, First Division, held rugs identical with those here to be dutiable under paragraph 1116 (a). That case, however, was decided on a record much less complete than the present one and the sole issue was stated by Government counsel to be "whether or not the fact that the base fabric of the involved rugs was not made on a power-driven loom is legally sufficient to exclude them from classification under paragraph 1117 (c), *supra*, as classified, and relegate them to paragraph 1116 (a), as claimed." Under those circumstances, the decision in that case is not pertinent here.

The case of *United States* v. *Otis McAllister & Co.*, 31 C. C. P. A. (Customs) 8, C. A. D. 242, relied on by appellants, involved the interpretation of the term "woven-wire netting." That decision is clearly based on the commonly understood meaning of the term "weaving" as applied to wire netting, rather than to fabrics, hence it is not considered persuasive in the present case.

Appellants emphasize the fact that over a long period of years prior to 1922, the statutory requirement to be met by rugs seeking classification under "Oriental rug" paragraphs was that they be "similar rugs," but that since 1922 the express reference to similarity has been omitted. In our opinion, however, the omission in question does not indicate a Congressional intent to do away with the doctrine of *ejusdem generis* as applied to sections of the 1930 Tariff Act here under consideration. It is to be noted that all the decisions cited above as supporting our position herein were rendered subsequent to 1922. It seems to us that, regardless of the omission of the express reference to similarity, paragraph 1116 (a) of the Tariff Act of 1930 clearly contemplates that all articles classifiable under that paragraph shall be of the same general kind as those *eo nomine* provided for.

It may be noted in passing that the Summaries of Tariff Information, Volume II, part 2, 1948, issued by the United States Tariff Commission make no mention of hooked rugs under paragraph 1116 (a), but under paragraph 1117 (c) is the following statement:

Wool floor coverings, including mats and druggets (other than those in chief value of mohair), covered in this summary, have been principally wool druggets and Numdah rugs from India, and wool hooked rugs from China and Japan. Floor coverings of this character, with the possible exception of hooked rugs, are not produced in the United States.

*      *      *      *      *      *      *

Wool hooked rugs are made by hand, using a small hand punch or an electrically driven needle to punch yarns (or, in some rugs, rag strips) through the meshes of jute burlap so as to form a looped pile on the face or top side.

For the reasons given, we agree with the conclusion of the Customs. Court that the rugs are classifiable under paragraph 1117 (c) of the Tariff Act of 1930.   The judgment is accordingly *affirmed*.

JACKSON, Judge, retired, recalled to participate.